UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PURCELL HARTISON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-831 (CEJ) |
| ) | |
| DAVE DORMIRE, ) | |
| ) | |
| Respondent. ) | |

# MEMORANDUM

This matter is before the Court on the petition of Purcell Hartison for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner is presently incarcerated at the Jefferson City Correctional Center pursuant to the sentence and judgment of the Circuit Court of the City of St. Louis, Missouri. On September 19, 2007, a jury found petitioner guilty of second-degree murder, in violation of § 565.021, Mo.Rev.Stat., second-degree robbery, in violation of § 560.030, second-degree domestic assault, in violation of § 565.073, and armed criminal action, in violation of § 571.015. Resp. Ex. D at 311-12. The trial court sentenced petitioner as a persistent offender to term of life imprisonment, two consecutive terms of ten years, and one concurrent term of ten years. On February 24, 2009, the Missouri Court of Appeals affirmed petitioner's convictions and sentences. State v. Hartison, 278 S.W.3d 712 (Mo. Ct. App. 2009).

Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which the post-conviction court denied. On April 12, 2011, the Missouri Court of Appeals summarily affirmed the denial of post-conviction relief.

Hartison v. State, 348 S.W.3d 602 (Mo. Ct. App. 2011). On May 9, 2011, petitioner timely filed this petition for relief pursuant to 28 U.S.C. § 2254.

I. **Background**

On the evening of March 1, 2005, a stolen sport utility vehicle (SUV) crashed into a house in the City of St. Louis and killed the home's occupant, Sally Lou Henderson. She died of blunt force or crushing injuries to the chest. Resp. Ex. A at 345. Petitioner Purcell Hartison was identified as the driver of the SUV.

Alisa Johnson testified that she had dated petitioner for a period of eight months but had broken the relationship off in late 2004. Id. at 202-04. He came to her home in St. Louis County twice on March 1, 2005, but she told him to leave. That night, she was driving her car in the City of St. Louis. She looked in her rearview mirror and saw a "big old red truck" coming "pretty fast" behind her. Id. at 210-12. She recognized the driver as petitioner. The truck hit the rear of her vehicle. A second impact forced her vehicle across an intersection and a vacant lot, along the side of a tree, and into the front porch of the house at 5566 Terry. Id. at 215-18, 266. The pursuing vehicle then "[went] flying over the top of [her car] into the house." Id. at 218. Ms. Johnson locked the car doors and attended to her passenger, James Morgan, who was unconscious and bleeding from his mouth or nose. Ms. Johnson testified that petitioner then approached her car with a "long piece of metal," like a crow bar or steering wheel lock, and smashed all the car's windows and lights. He reached into the car and unlocked the passenger side door and asked Mr. Morgan for money. Mr. Morgan handed over his wallet but said he had no money. Petitioner hit him repeatedly with the crow bar. Id. at 220-21. Ms. Johnson testified that she heard sirens approaching

and petitioner ran off on foot. Ms. Johnson told the responding officers that petitioner was the person responsible for the incident.

Roy Lee testified that he was driving his red Dodge Durango SUV southbound on Goodfellow Boulevard on the night of March 1, 2005. While he was stopped at a traffic signal, his car door opened and he was pulled from the driver's seat by a black man who was about six feet tall and had a bald or closely shaved head. The man got into the SUV and drove off, seemingly in pursuit of another car just leaving a nearby convenience store. Id. at 285-86. Mr. Lee called 911 and took off on foot in the direction his SUV had taken. When he arrived near the accident scene, he saw the rear end of his truck sticking out of Ms. Henderson's house. The following day, he was shown a photo spread but was unable to identify anyone as the man who stole his vehicle. On March 5th, he viewed a lineup and identified petitioner without hesitation. Mr. Lee denied knowing either Ms. Johnson or petitioner before this incident.

Petitioner testified that he lived at Ms. Johnson's home in St. Louis County. Id. at 368. On the afternoon of March 1, 2005, he walked to a car wash to make some money. When he left the car wash, he headed to a "drug spot" to buy some rock cocaine. Id. at 372. Before he got there, however, he encountered Mr. Lee sitting in his Durango. Although the men did not know one another, Mr. Lee offered to share some cocaine he had with petitioner. Petitioner accepted and got in the Durango. Petitioner testified that he and Mr. Lee then spent some period of time driving around and smoking cocaine. Petitioner also testified that, after awhile, Mr. Lee asked him whether he knew "a certain individual, . . . he never said a name but he was describing Alisa [Johnson]." According to petitioner, Mr. Lee stated this woman owed him money for drugs. Id. at 375. Mr. Lee then went into a grocery store in St. Louis County to

see if he could get some cash to buy more drugs. Petitioner used the phone in the store lobby to call Ms. Johnson. She wasn't home and petitioner spoke to her son, Martin. He told Martin to write down Mr. Lee's license plate number "just in case something happened." Id. at 377. According to petitioner, Mr. Lee then returned to the Durango with vodka he purchased. The two men drank together for awhile before Mr. Lee dropped petitioner off. Id. at 381. Petitioner then walked by Ms. Johnson's house but her car was not there so he kept going. Id. at 396. He testified that he spent the night in a laundromat. Ms. Johnson's son Martin confirmed that petitioner called the house and told him to write down a license plate number. Id. at 426. He thought he talked to petitioner around the time the accident was reported on television. Id.

Detective Darryl Walker testified that he arrested petitioner on March 4, 2005. Id. at 463. When Detective Walker informed petitioner of the accusations against him, petitioner denied being in St. Louis city that night or ever being inside a red Durango. When asked to account for his actions on March 1st, petitioner stated that he had been alone in St. Louis County, smoking crack cocaine in a grocery store parking lot. Petitioner denied seeing Ms. Johnson at all that day.

Additional facts will be included as necessary to address the merits of petitioner's claims for relief.

## II. Legal Standard

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

## III. Discussion

### Ground 1: Trial Court Error in Allowing Alias Evidence

Petitioner contends that the trial court erred in allowing the prosecutor to ask him why he previously used an alibi.

On cross-examination, the prosecutor asked petitioner if he'd ever used another name. Id. at 400. Petitioner acknowledged that he had called himself "George Brown" in the past. When the prosecutor asked petitioner why he had done so, defense counsel objected on the basis of relevance. The trial court overruled the objection and petitioner testified he used the name because he "was on the run . . . from . . . probation. I had did a burglary and I knew they was looking for me." Id. at 401. He also testified that he had five prior convictions for burglary. Id. at 402. Petitioner contends that the admission of this evidence was prejudicial to him in that jurors would have concluded that his trial testimony was another attempt to deceive the judicial system.

Questions concerning the admission of evidence are matters of state law and thus are not cognizable in federal habeas review. Wood v. Lockhart, 809 F.2d 457, 459 (8th Cir. 1987). A state court's evidentiary ruling will warrant the issuance of a habeas writ only where the asserted error resulted in a denial of due process. Id. To establish a right to relief, the petitioner must show that the evidentiary ruling was "so gross," "conspicuously prejudicial," or "otherwise of such magnitude that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process." Id. (citations omitted). The Court finds that the admission of the alias evidence did not violate petitioner's due process rights because the evidence of his guilt was overwhelming -- he was positively identified by two victims,

one of whom new him very well and was unlikely to be mistaken in that identification. Petitioner's first claim for relief is denied.

## Ground 2: Improper Sentencing Considerations

Petitioner contends that the trial court improperly based his sentences on the fact that he went to trial, testified, and refused to admit guilt.

During the sentencing hearing, petitioner made a statement in which he denied committing any of the offenses and criticized his attorney's performance. Id. at 519-21. The following exchange then occurred:

> The Court: Anything else?
>
> Petitioner: No. That's it.
>
> The Court: So much for the hope of the concurrent sentence. So nothing about the woman that you killed or anything like that?
>
> Petitioner: I mean, what can I . . . I'm being accused of something that I didn't do. . . I can't speak on something that I know I didn't have no part in. . . I don't know what happened.

Id. at 521.

The court then said, "Your alibi was one of the dumbest alibis I have ever seen in my life . . . And just for that I think you should get a lot of time. Just to get the word back to the fellas . . . at the Justice Center that you don't bring that lame ass defense into a court and expect to get away with it." Id. Referring to information in the presentence investigation report, the court told petitioner, "all through your life, you've been a leech. . . You're a predator. You attach yourself to people and then just suck them dry." Id. at 522. The petitioner responded by saying, "It is a joke to me . . . [b]ecause everything that I said actually happened. So the alibi . . . it's the truth." Id. at 523.

Petitioner claims that the judge's statements establish that he was biased and imposed a sentence based on improper considerations, including petitioner's decision to testify and his refusal to admit guilt.

A fair trial in a fair tribunal is a basic requirement of due process. Dyas v. Lockhart, 705 F.2d 993, 995 (8th Cir. 1983) (citing In re Murchison, 349 U.S. 133, 136 (1955)). And the right to a fair trial necessarily requires that the trial judge be neutral, detached, and free from actual bias. Id. In considering a claim of judicial bias, courts "must at all times presume the honesty and integrity of those serving as judges." Id. at 996 (citing Withrow v. Larkin, 421 U.S. 35, 47 (1975)). The due process test to determine whether judicial bias should be presumed in a particular case is whether, "realistically considering psychological tendencies and human weaknesses, the judge would be unable to hold the proper balance between the state and the accused." Id. at 996-97 (citing Tumey v. Ohio, 273 U.S. 510, 532 (1927); Withrow, 421 U.S. at 47; Taylor v. Hayes, 418 U.S. 488, 501 (1974)). Disqualification of a judge is constitutionally required only in the most extreme cases of bias or prejudice. Ryan v. Clarke, 281 F. Supp. 2d 1008, 1074 (D. Neb. 2003).

Petitioner cannot establish bias or prejudice. As the Missouri Court of Appeals noted, the trial court sentenced petitioner in accordance with the prosecution's recommendation. Furthermore, critical or hostile remarks do not support a claim of bias and partiality at sentencing "because a judge's detached neutrality necessarily disappears and the judge becomes the conscience of the community." Resp. Ex. G. at 5 (citing Haynes v. State, 937 S.W.2d 199, 204 (Mo. 1996) (*en banc*)). The judge specified that his comments were based on the presentence investigation, petitioner's criminal history and the current conviction. Thus, there was no indication that his

opinion was based on anything other than the information and evidence obtained in the case. Id. at 5-6 (citing Hurst v. State, 998 S.W.2d 113 (Mo. Ct. App. 1999)). Petitioner has failed to establish an extreme case of prejudice or bias, and his second claim for relief will be denied.

### Ground 3: Ineffective Assistance of Trial Counsel

Petitioner asserts five claims that his trial counsel rendered constitutionally ineffective assistance.[1]

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. In order to establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Petitioner first asserts that trial counsel should have investigated to determine who called 911 to report the crash, on the theory that the caller would have been able

---

[1]These claims were raised in petitioner's *pro se* motion for post-conviction relief, but were not included in the amended motion filed by counsel. Resp. Ex. I at 5, 19-40. Respondent argues that the claims are thus procedurally defaulted. Because the Court concludes that the claims fail on the merits, it is unnecessary to address whether petitioner can establish cause for the procedural default. See Martinez v. Ryan, 132 S. Ct. 1309, 1318 (2012) (ineffective assistance of post-conviction counsel may be cause for procedural default).

to establish that petitioner was not the driver of the SUV. Trial counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. There is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy. Garrett v. Dormire, 237 F.3d 946, 949-50 (8th Cir. 2001). The record reflects that counsel filed a motion to obtain the 911 records and introduced recordings of the calls at trial.[2] Ex. C at 35; Ex. A. at 414-16. Petitioner's contention that further investigation would have produced exculpatory evidence is merely speculative and his claim will be denied.

In his second claim of ineffective assistance, petitioner argues that counsel should have subpoenaed "phone records to the number [he] called" to establish that he was in St. Louis County at a time that would have made it impossible for him to be in St. Louis City at the time of the crimes. Petitioner testified that he called Ms. Johnson's home from a pay phone in a grocery store in St. Louis County and spoke with her son Martin. He and Mr. Lee then drove around in the Durango for awhile longer. Resp. Ex. A at 362, 377, 395. Martin confirmed that he spoke to petitioner on the phone, but stated that the call occurred around the time the accident was being reported on the television. If Martin's recollection was correct, then the call could not have been made from the location identified by petitioner because there would not have been sufficient time for the Durango to get to the scene of the accident. Counsel might well have concluded that phone records would be damaging to petitioner's case. Petitioner cannot overcome the "strong" presumption that trial counsel's decision with respect to the phone records was sound trial strategy.

---

[2]At least one call to 911 was placed by Mr. Lee.

Petitioner next complains that counsel failed to impeach witnesses Johnson and Lee with their prior inconsistent statements. This claim fails, first, because petitioner has failed to identify specific statements he believes would have served this purpose. In addition, the claim is refuted by the record: defense counsel attempted to ask Ms. Johnson about statements she made to the police, id. at 241-47, and questioned Mr. Lee about his prior deposition testimony. Id. at 294-301, 306-09.

Petitioner faults counsel for failing to have Ms. Johnson read the contents of a document she wrote. The document in question, entitled "Withdrawal of Prosecution by Complainant," is dated November 8, 2006 and is signed by Alisa Johnson. Resp. Ex. D. at 292-94. In this document, Ms. Johnson states that she had been drinking and using drugs on the night of the incident. She also states that she cheated on the breathalyzer given to her at the scene by putting her mouth over the tube. At trial, defense counsel attempted to impeach Ms. Johnson with this written statement. Resp. Ex. A at 226-31. However, Ms. Johnson repeatedly quarreled with counsel[3] and the court told counsel to move on. Id. at 230-31. Ms. Johnson became somewhat belligerent with counsel and, on two occasions, the court told her she was in danger of being placed in a cell until she could calm down. Id. at 231-32; 236-40. Counsel's performance in this questioning Ms. Johnson was not constitutionally deficient.

In her document, Ms. Johnson also stated that she told Roy Lee "how to i.d. Mr. Hartison." On the day of the line-up, Ms. Johnson and Mr. Lee were transported to the police station together. At the suppression hearing, Ms. Johnson testified that, while

---

[3]The following exchange is typical: "Q: Miss Johnson, did you also write that cheated on the breathalyzer test? A: If that's what you want to call it, yeah. So you can go ahead and get off that letter. At that time, again, I was in a mental breakdown. I could have said I screwed your momma. I wouldn't know." Id. at 231.

they were in the police car, Mr. Lee told her that he had not been able to identify anyone in the photo spread. According to Ms. Johnson, she told Mr. Lee that petitioner was tall and bald-headed. Resp. Ex. A at 189. This is consistent with the description Mr. Lee gave to police on the night of March 1st. See id. at 439 (Det. Darryl Walker testified that Mr. Lee described his assailant as "six foot, bald head, medium build"). Mr. Lee testified at the suppression hearing that he and Ms. Johnson were transported together to the station for the line-up but stated that they did not speak about identification issues. Id. at 183-84. He also stated that he recognized petitioner's face "immediately." Id. at 181-82.

At trial, counsel did not ask either witness regarding any conversation they had before the line-up and did not introduce Ms. Johnson's document. The Court cannot say that the admission of this evidence would have altered the outcome of the trial. First, the record establishes that Mr. Lee already knew that he was looking for someone who was tall and bald-headed and it is highly improbable that the jury would have decided that he identified petitioner based solely on Ms. Johnson's statement. The Court also does not believe that petitioner was prejudiced by the failure to admit Ms. Johnson's statement into evidence, since she effectively repudiated its contents during her testimony.

In his final ineffective-assistance claim, petitioner asserts that counsel failed to introduce evidence that Ms. Johnson had been drinking and using drugs the night of the incident, as she stated in her written document. The record refutes petitioner's claim, in that counsel asked her about this statement in her written document on multiple occasions. Id. at 222-23; 226-30.

### Ground 4: Denial of Continuance

Petitioner contends that the trial court erred in denying a continuance to secure the appearance of James Morgan at trial. Defense counsel did not request a continuance until the close of the prosecution's case. At that time, defense counsel stated that Mr. Morgan's testimony would contradict Ms. Johnson's with respect to the events preceding the encounter with the SUV. Id. at 477-78. The court denied the request.

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." Ungar v. Sarafite, 376 U.S. 575, 589 (1964). "[O]nly an unreasoning and arbitrary insistence upon expeditiousness in the face of justifiable request for delay" rises to the level of a constitutional violation. White v. Lockhart, 857 F.2d 1218, 1220 (8th Cir. 1988) (internal quotations and citations omitted). In order to prevail, petitioner must show that in denying his request for a continuance the district court acted in a manner "so egregious that it was fundamentally unfair." Id. In this case, there is no evidence that Mr. Morgan would have contradicted the critical testimony identifying petitioner as the perpetrator of the events on March 1, 2005. Petitioner cannot establish that the trial court's decision was egregious or fundamentally unfair.

### V. Conclusion

For the reasons discussed above, the Court concludes that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in

the state court proceedings. 28 U.S.C. § 2254(d). Petitioner has also failed to make a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 14th day of May, 2014.